The Chancellor.
There is nothing said in the deed of dissolution about allowing Mr. Runyon $500, either as a share in the profits, or for his risks in endorsing for the firm. By the terms of the deed of dissolution the defendant was to collect the claims, and pay the debts, and pay over to the complainant half the surplus. This $500 now claimed by Mr. Runyon, and allowed him by the Master for his risks in endorsing for the firm, was certainly not a debt.
Again, on the final separation, the defendant, as he admits in his answer, was still to collect, and pay the debts, and pay over to the complainant half the surplus'. In this part of the answer he says he was to pay over after making proper deductions and payments.
There is nothing said in the answer about this $500 to be allowed to Mr. Runyon. The general words “after making proper deductions and payments,” and an item in the schedule annexed *297 to the answer, of the date of May 1, 1841, “Paid P. P. Runyon on his account $500,” are the only matters in the answer that can hare any reference to this $500 allowed to Mr. Runyon for liia risks.
The receipt given by tho complainant, on the 17th December, 1841, is not relied on as proof of final settlement and discharge, for the parties have agreed to go into the account, and it was agreed that a reference should ho made to a Master to state tho accounts.
This allowance to Mr. Runyon, if made, must he made on the sole ground of what Mr. Runyon, himself, says about it. He was called by the defendant. Nothing is said about it in his principal examination. On cross examination, he says, he expected some remuneration for his risks, independent of his interest money, if the experiment was successful; that there was no distinct bargain about it, it was cheerfully awarded.
Being again examined on the part of the defendant, he says, the $500 paid him for his risk was by the agreement of both" parties.
Being again eross-examined, he says, that at first there was no specific sum agreed on for his risk; the $500 was agreed on some time during the progress of the dissolution. That he proposed to take a portion of the profits or a specific sum; that the ©omplainant said it had better be a specific sum, and he, the witness, proposed this amount, and it was agreed to ; that nothing was said about conditions. He thinks both were present, and that it was in the shop before the final separation; that they agreed to it cheerfully, particularly the complainant.
It may be remarked here, that the final separation was in December, 1840; and that to exhibit No. 5, Mr. Runyon’s account against the firm, is subscribed Mr. Runyon’s receipt in full to Onderdonk, dated June 1,1841; and that this exhibit shews,, under date of July 1, 1840, this charge “His share of the profits, $500.
Has this $500 been actually paid by the defendant to Mr. Runyon % If I could be satisfied that it had been, by agreement of the parties, so paid by the defendant that to disallow it would result in loss to him, I would leave the parties in statu quo; but *298 I am not satisfied that any thing more has been done, between Mr. Runyon and the defendant, in reference to this $500, than the stating the accounts between them in a way to relieve the defendant to that extent in his accounts with the complainant. If paid, when was it paid 1 No one tells us. Nor is there any direct allegation that it has ever been paid. Mr. Runyon says, that besides the bond and warrant for $4,064 84, he had endorsed for the firm to about $3,000; and in another part of his deposition he says, that after the final separation the defendant had paid him between $3,300 and $3,400 due him from the firm. Is this $500 included in the language “due him from the firml” Was it a debt1? In another part he says, the $3,300 or $3,400 paid him by the defendant was in small sums of a few hundred dollars at a time, except the last which was $1,600. There is-an evident tenderness in reference to the matter of the actual payment of this $500. But, under the circumstances of the case, and in view of the relation existing between Mr. Runyon and the defendant, and the remark of Mr. Runyon that he would not have done what he did had not one of the firm been his son-in-law, I do not think I should have been satisfied to allow this charge even if there had been evidence of a formal payment of it by his son-in-law.
The master does not put the allowance on the ground that it had been paid. He allowed it “as a compensation to Mr. Runyon for his risk in endorsing for the firm and supporting it through difficulties, upon the agreement of the parties as proved.” I think it is an agreement which, if clearly proved, the court should not aid in carrying out. It is the first occasion on which I have heard it claimed that one is to be allowed, by a court, compensation for endorsing for another. If he had advanced the money, instead of endorsing notes, he could have but legal interest. To my mind, the sanction of such'a charge would furnish a cover for exorbitant charges, in effect usury, and that, not on money advanced, but on mere liabilities incurred. It would be a mischievous precedent to allow such a charge. This exception of the complainant is, therefore, allowed.
Next, as to the other exception on the part of the complainant.
*299 The Master has charged the defendant with the amount received by him, $5603 13
And credited him with amount paid by him, 4640 69
And has struck the balance here of 962 43
The report then divides this balance and says one half of it is due complainant, 481 22
And then says that it appears by the evidence that on the 17th Sept. 1841, $378 69 was paid by the defendant to the complainant, and deducts it, 378 69
And strikes a balance against the defendant of $102 53
The answer says, that on the 17th September, 1841, the defendant paid to the complainant $335 69, and that the complainant admitted he had received $43 from debtors of the firm, on accounts with which the defendant stood charged in the inventory ; which $43, added to the sum actually paid, made $378 69.
It does not appear that in the Master’s charging side of the account, the defendant is charged with the accounts from which the $43 was collected by the complainant; but, if I understand it, the defendant is charged by the Master only with the monies actually received by him. The Master says, that he finds that the defendant received, subsequent to the dissolution, of the funds and effects due and belonging to the firm, $5,603 13, as appears by schedule No. 1 annexed to his report; that the said sum embraces all the monies and effects of the partnership which came to the hands of the defendant, and all the monies and effects of the firm for which he should be made accountable ; that schedule No. 1, annexed to his report embraces &c. (see the first part of the report.) Now, schedule A., annexed to the bill as an account of the assets of the firm at the time of the dissolution, amounts to $8,147 41; and schedule B., annexed to the bill as an account of the monies received by the defendant from the assets, amounts to but $5,589 91. I do not see from this that the $43 was received by the complainant from accounts with which the defendant remains charged.
The answer gives a list of names, with the amount due from each, which the defendant says he was not able to collect; and *300 he takes credit for them; and then ssys :
' “Leaving in the hands of the defendant claims which have been collected, to the amount of $5,469 87.”
He then admits, that since the making of the inventory, he has collected and received the following items not included in the inventory, (giving names and sums,) amounting to $117 33. And then adds: “which, added to the amount in the hands of the defendant as last above stated, makes the sum of $5,587 20;” which sum, it will be perceived, is within $2 71 of the amount of said schedule B., annexed to the bill as an account of the monies-received by the defendant. It seems from this that the defendant has only charged himself with the monies actually received by him; and why should he charge himself with more'?
The Master has charged him-with but $5,603 13; being but $16 93 more than the defendant has charged himself with having actually received. What this additional $16 93 is for, would, I presume, be discovered.by a particular examination of the report ; but this is not necessary; it is not the $43 received by the complainant. And I do not see that the defendant, as the account is stated by the Master, is charged with the accounts from which the complainant received the $43. If it can be shewn that he is, there can be no objection to his doing so.
To make the account correct, in the Master’s mode of stating it, one of two ways may be taken; either to add the $43 to the whole amount of receipts, which will show the amount to be divided between them, and let the $43 go towards the complainant’s half as already received by him; or, to deduct, from the balance $481.22 struck by the Master, the $335 69 and half of the $43.
This exception on the part of the complainant is also allowed.
"The exception on the part of the defendant, that the Master has inade no allowance to him by way of compensation for his services in settling the busines of the firm, is, I think, well taken. I shall direct the allowance of 3 per cent, on $5,603 13, and that he be credited therefor, and that the balance in his hands be then struck; which will be the same as deducting half of the commissions from the complainant’s half of the balance struck. •